ENID G. PARTRIDGE *vs.* RICHARD W. PARTRIDGE. June 16, 1982. In this appeal, arising out of a complaint for divorce and division of marital property pursuant to G. L. c. 208, § 34, the wife challenges the orders for alimony and the division made of certain assets. We have considered the findings of the judge, a statement of evidence pursuant to Mass.R.A.P. 8(c), as appearing in 378 Mass. 924 (1979), the financial statements, and various uncontroverted documentary materials submitted by the parties.

1. The judgment entered on December 4, 1980, adjudicated some of the claims pending in the case. It is manifest from that judgment's express terms, however, that further proceedings were contemplated before a final judgment would enter. It is also manifest from the nature and detail of the provisions of the supplementary judgment entered on January 16, 1981, that the latter judgment is the one which, in the peculiar circumstances of the case, should govern the question of the timeliness of the appeal. It follows that the wife's notice of appeal from the supplementary judgment, filed on February 13, 1981 (which, with one minor exception, raises questions pertaining exclusively to orders embodied in that judgment), is seasonable. As a consequence, we need not consider the issues arising out of the judge's disposition of the wife's motion for relief from judgment.

2. The supplementary judgment made a division of certain real and personal property and then ordered (a) that the marital home be sold immediately and its equity divided equally between the parties; (b) that the husband pay $75 in weekly child support but that no alimony be paid to the wife until the first week of June, 1984, when the husband is directed to commence payment of alimony at the rate of $50 per week to continue for 156 consecutive weeks thereafter; (c) that the shares presently held by the parties in P & S Broadcasting, Inc., remain their separate property. The findings necessary to support the judgment, see *King* v. *King*, 373 Mass.

37, 40 (1977); *Crossman* v. *Crossman*, 10 Mass. App. Ct. 839 (1980), were not made for approximately eight months after the judgment entered. See *Mancuso* v. *Mancuso*, 12 Mass. App. Ct. 973, 975 (1981). While the orders which provide for child support and the disposition of the modest equity in the marital home appear to have adequate support in the record, we agree with the wife that the orders with respect to alimony and the division of the corporate shares lack proper foundation and require, as a consequence, that the supplementary judgment be set aside.

The findings reveal that scant attention was paid to the crucial issue in an alimony dispute, namely, the wife's need for support and maintenance in relationship to the respective financial circumstances of the parties. See *Brown* v. *Brown*, 222 Mass. 415, 417 (1916); *Putnam* v. *Putnam*, 5 Mass. App. Ct. 10, 15 n.6 (1977); *Lynch* v. *Lynch*, 5 Mass. App. Ct. 167, 170 (1977). The wife's needs are primarily dealt with in findings which state that she "does not now work but [she] has worked in the past," that she possesses "employable skills," and that she is "at present living with a male companion who contributes to her support." There is no indication of the amount of support provided the wife by her companion or whether it constitutes a dependable financial resource. Yet it appears uncontradicted that, while the wife might have intended to obtain employment, she was unemployed at the time of the divorce, and subsisting principally on $22.50 a week in public assistance payments. It also appears that her needs and those of the children substantially exceed the weekly sums received from the combined welfare and child support payments. See and compare *Talbot* v. *Talbot*, 13 Mass. App. Ct. 456, 457-459 (1982). The husband, on the other hand, holds an executive position which furnishes him with a salary in excess of $30,000 per year and several other benefits from which he realizes cash value. While the husband has some debts and current obligations, the judge made no finding, and none can be satisfactorily inferred from the record before us, that he is unable to contribute anything to the wife's support. In addition, the statement of evidence indicates that the judge may have confused the wife's testimony as to the needs of the children with her need for alimony. We have reason to suspect that the fashioning of an alimony award inconsonant with the wife's present needs may have resulted from undue weight being given to her current living arrangements, in disregard of the principle that a decision on alimony should not be determined "by such general considerations as the relative moral rectitude of the spouses." *Davisson* v. *Davisson*, 12 Mass. App. Ct. 420, 424 (1981). See *O'Brien* v. *O'Brien*, 325 Mass. 573, 577 (1950); *Clifford* v. *Clifford*, 354 Mass. 545, 548 (1968); *Putnam* v. *Putnam*, 5 Mass. App. Ct. at 15-17; *Singer* v. *Singer*, 8 Mass. App. Ct. 113, 122 (1979); *Talbot* v. *Talbot, supra* at 459. The primary focus should instead be on the economic facts viewed in light of the financial exigencies of the wife, and the ability of the husband to contribute to those needs. The findings here do not meet this test.

We also have difficulties with the order dividing the parties' shares of P & S Broadcasting, Inc. These shares constitute a major asset of the parties. The corporation is closely held, and the husband, who manages the radio station owned by the corporation, is its majority shareholder. The judgment permitted the wife and the husband to retain the shares they now own in the corporation (75 and 275 shares, respectively, out of a total of 525 outstanding shares) and "restrained [the husband] from selling, pledging, mortgaging or . . . alienating [the] . . . interest in [his shares] until further order of the court." The husband was further directed to repay the debt owed the wife as a result of the money she had lent him to make his initial purchase of 350 shares.

The orders appear to have been premised on inadequate factual information as to the stock's value and its transferability. The judge set a value on the shares based upon two recent sales. It appears, however, that these sales were transacted between existing shareholders and that they may not have afforded sound indices of value. Moreover, transfer or sale of any shares is subject to a restriction imposed by the corporation's charter which requires them to be tendered first to existing shareholders who may purchase them at par value. This restriction would, presumably, be fully enforceable against the wife if she sought to sell or transfer any of the shares presently standing in her name. See *Brown* v. *Little, Brown & Co.*, 269 Mass. 102, 110 (1929); Peairs, Business Corporations § 570 (2d ed. 1971). See also discussion in *Durkee* v. *Durkee-Mower, Inc.*, 384 Mass. 628, 631-632 (1981). The wife's shares thus appear to have no market and little practical value. Moreover, the findings provide no real clue as to what the judge may have sought to accomplish by the division of the stock and the order prohibiting the husband from transferring his shares until further order of the court. A proper resolution of the case requires a decision in which the purposes behind the orders are not left to speculation. While some or all of the considerations discussed may have gone unnoticed at the bench trial held on the case, enough was shown to have alerted the judge to the fact that an adequate evidentiary base for a proper division of assets under G. L. c. 208, § 34, was lacking. We conclude that the present decision fails to "make apparent the rationale underlying" it, *Putnam* v. *Putnam, supra* at 15, and that it "lack[s] the comprehensiveness necessary to support an equitable division of property." *Id.* at 17.

3. We see no reason on the present record for an order that the case be assigned to a different judge.

The supplementary judgment entered on January 16, 1981, is vacated. The judge is to conduct a new trial on the questions of alimony, child support, and the division of property at which the parties are to be permitted the opportunity to present further evidence and to be heard thereon. At the conclusion of the trial, the judge is to make new determinations on the support issues in light of the present needs and circumstances of the par-

ties, see *Meghreblian* v. *Meghreblian*, 13 Mass. App. Ct. 1021, 1021-1022 (1982), and a new allocation of the marital property. The orders are to be embodied in a separate judgment and are to be supported by findings, promptly made, reflecting consideration of the statutory factors.

*So ordered.*

*Gregory C. Howard* for Enid G. Partridge.
*Terrence J. Daley* for Richard W. Partridge.